IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs March 20, 2019

**ANTHONY BLAKE WISDOM v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-C-2245     Steve Dozier, Judge**

_____

**No. M2018-00641-CCA-R3-PC**

_____

The Petitioner, Anthony Blake Wisdom, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his conviction of aggravated robbery and resulting fourteen-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Anthony Blake Wisdom.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glen R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In August 2012, the Davidson County Grand Jury indicted the Petitioner and his two codefendants, Kira Bukowski and Sarah Syers, for aggravated robbery, a Class B felony. The victim, Bukowski, and Syers testified against the Petitioner at trial; the jury convicted him as charged; and the trial court sentenced him as a Range II, multiple offender to fourteen years in confinement. This court affirmed the Petitioner's conviction on direct appeal and stated as follows regarding the sufficiency of the evidence against him:

In the light most favorable to the State, the record reflects that the Defendant pushed his way into the victim's apartment while holding what the victim believed was a pistol. The Defendant pushed the victim onto a couch and held the victim down, placed the gun to the victim's head, demanded drugs and money, and instructed Ms. Bukowski to take two laptop computers. Ms. Bukowski took the computers. While the Defendant had the gun placed to the victim's head, the Defendant took a pack of cigarettes and the victim's wallet from the victim's pocket. The Defendant took $100 from the victim's wallet. Witness testimony reflects that the Defendant knew the victim had $100 just before the incident occurred, and the Defendant's fingerprint was found on the power cord for one of the stolen laptop computers. The Defendant drove the van with Ms. Bukowski and the computers to another apartment complex and took the computers out of the van.

Although the testimony of Ms. Syres, Ms. Bukowski, and the victim varied on some details, the jury by its verdict resolved any conflicts in favor of the State, and we may not revisit matters of witness credibility. The evidence was sufficient to support the Defendant's conviction, and he is not entitled to relief on this basis.

State v. Anthony Blake Wisdom, No. M2015-00099-CCA-R3-CD, 2016 WL 874783, at *7 (Tenn. Crim. App. at Nashville, Mar. 8, 2016).

The Petitioner filed a timely pro se petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and post-conviction counsel filed an amended petition, claiming that trial counsel was ineffective because he failed to advise the Petitioner about the nature of the charge; failed to investigate the allegations and the case; failed to interview the State's witnesses and develop a credible defense strategy; failed to interview the victim's neighbor, who would have testified for the defense that the neighbor never saw a gun or any of the victim's property on the Petitioner's person; and erroneously advised the Petitioner not to testify.

At the evidentiary hearing, the thirty-five-year-old Petitioner testified that trial counsel was appointed to represent him. The Petitioner was on bond while awaiting trial, and he met with trial counsel in trial counsel's office about three times. The case was set and reset for trial multiple times, and the Petitioner received one fourteen-year offer from the State but rejected it. Trial counsel and the Petitioner did not know what Bukowski

- 2 -

and Syers were going to say at trial, and the Petitioner did not know what trial counsel's strategy was going to be. The Petitioner said that he wanted to testify at trial but that trial counsel kept advising him not to testify because of his criminal record. The Petitioner did not testify, and trial counsel did not present any proof on his behalf.

The Petitioner testified that Bukowski and Syers also had criminal records and were not credible. Nevertheless, they ended up receiving probation, and the Petitioner "[took] the fall for everything." The Petitioner stated that the jury did not get to hear "what actually happened" and that not testifying at trial was his "greatest regret." He said that if he had testified, he would have stated that "there was no gun involved at all" and that "[i]t was just a date gone wrong." The Petitioner said he would have told the jury that he walked up on his codefendants and the victim arguing over money, that the victim reached out to grab one of the "girls," and that the Petitioner pushed the victim. Bukowski grabbed the two laptops and ran, and the Petitioner offered to help the victim get his computers back. The victim locked his apartment door and followed the Petitioner down the hallway. The victim's neighbor came outside, and the victim told the neighbor, "[P]lease help me, they take my stuff." The Petitioner "didn't want to get in trouble for something [he] didn't do," so he fled. The Petitioner did not have a gun, and the victim's neighbor did not see a gun. The Petitioner admitted that he pushed the victim but said that he did not rob the victim. Bukowski took the victim's laptops and money, and the Petitioner's fingerprint ended up on one of the power cords because he tried to grab it from her. The Petitioner said that he was a drug addict at the time of the incident but that his memory was "pretty clear."

The Petitioner testified that the victim gave inconsistent statements. For example, the victim initially told the police that he did not pay Bukowski or Syers for sex but later admitted that he was involved in prostitution. At first, the victim testified at trial that he was smoking a cigarette on his balcony when the defendants entered his apartment; however, he later testified that he was on "Skype" with his mother when the defendants came into the apartment. The Petitioner said that if the victim had been on Skype as he claimed, then his mother should have seen the defendants in the apartment. The victim failed to show up for court four times. The Petitioner said that the victim did not want to come to trial because he knew he was lying and that the trial court should have dismissed the case.

On cross-examination, the Petitioner testified that his main complaints with trial counsel were that trial counsel did not let him testify and did not have the victim's neighbor testify. Trial counsel was young and claimed he had never "lost" a case. However, the Petitioner did not think counsel had ever been to trial.

The Petitioner testified that although he made bond, Bukowski and Syers remained in jail. The Petitioner acknowledged having four prior felony convictions, including three for theft, and multiple misdemeanor convictions. He did not understand, though,

how the convictions could be used against him when they were more than ten years old. He said that none of his convictions were for violent crimes and that "I have never been violent ever." He acknowledged that he was on probation when he was accused of robbing the victim.

The Petitioner testified that trial counsel told him there was no reason to have the victim's neighbor testify for the defense. The Petitioner acknowledged that the victim's neighbor saw the Petitioner come out of the victim's apartment and that the victim was "in distress." The Petitioner also acknowledged that the victim's neighbor chased him out of the apartment building. The victim's neighbor followed the Petitioner down the street and "rear ended" him at a stoplight. Nevertheless, the Petitioner wanted the victim's neighbor to testify at trial that he did not see the Petitioner with a gun.

Trial counsel testified that he had been licensed to practice law since 2009, that he had been practicing criminal defense almost exclusively since 2010, and that he had handled felony jury trials. Trial counsel represented the Petitioner at the Petitioner's preliminary hearing and at the Petitioner's December 2013 trial. The Petitioner was on probation when he allegedly committed the offense, and his probation was revoked. Trial counsel filed a motion to reduce the Petitioner's bond, the trial court reduced the bond to $50,000, and the Petitioner posted bond after he completed the probation revocation. Trial counsel agreed that he and the Petitioner probably met three times in counsel's office. However, trial counsel spoke regularly with the Petitioner and the Petitioner's father by telephone. Trial counsel said that he provided discovery to the Petitioner but that he did not remember if he gave discovery to the Petitioner "all at once or piecemealed it."

Trial counsel testified that as the Petitioner's July trial date approached, trial counsel learned that the Petitioner's codefendants were going to testify against him. Trial counsel asked the trial court for a continuance so that he could change his defense strategy, and the trial court reset the trial for October. Trial counsel's aunt died the Sunday before the trial was scheduled to begin, so the trial court reset the trial for November. Trial counsel said that the "biggest thing" he and the Petitioner talked about was whether the victim would show up for trial because the State had indicated that it could not locate the victim. Trial counsel told the Petitioner that "our chances are much, much better if the victim does not show." However, if the victim did show up for trial, trial counsel had found discrepancies in the victim's previous testimony. The victim also had been dishonest with the police about why the codefendants were at his apartment, and trial counsel had questions about the victim's "legal status." Trial counsel said that he did not interview the codefendants before trial because they made statements to the police when they were arrested. Therefore, trial counsel "kind of" knew what they needed to say for the State at trial. The State initially made a fourteen-year plea offer to the Petitioner but amended the offer to eight years to be served at eighty-five percent

- 4 -

release eligibility. The Petitioner refused to sign a plea agreement, so trial counsel began preparing for trial with the assumption that the victim would testify.

Trial counsel testified that he did not think the codefendants should be considered credible at trial because they were going to receive some type of sentence reduction in exchange for their testimony. Trial counsel's investigator spoke with the victim's neighbor before trial. The investigator told trial counsel that it was "not going to go well" for the defense if trial counsel called the neighbor to testify. The victim's neighbor had chased the defendants, damaged his own property by ramming their van, and would have corroborated the victim's testimony. Trial counsel said the only beneficial testimony the neighbor could have given for the defense was that he did not see a gun in the Petitioner's hands. However, everything else the neighbor would have said could have been "crippling" to the defense. Trial counsel had another criminal defense attorney act as a "second pair of eyes" on the Petitioner's case. The attorney agreed to work on the case for free and cross-examined the codefendants at trial.

Trial counsel testified that the Petitioner wanted to give the jury his version of the events, so trial counsel and the Petitioner discussed whether he should testify. Trial counsel told the Petitioner that it was the Petitioner's "absolute right" to testify. However, trial counsel was concerned about the Petitioner's criminal record, which included convictions from 2002, and he and the Petitioner talked about the "ten year rule." Trial counsel advised the Petitioner that the State may not be able to bring up the convictions at trial due to the time limit but that he and the Petitioner could address the issue later. The victim and the codefendants gave similar testimony at trial. After the State's proof, trial counsel, the Petitioner's father, and the Petitioner discussed whether the Petitioner should take the stand. Trial counsel said he warned the Petitioner that the Petitioner could be cross-examined by a prosecutor "who [has] been doing this for years" and that "there are too many things that [the prosecutor] could bring up that would cripple [your] telling of what happened." Although trial counsel thought the Petitioner's version of events was "very plausible," trial counsel also thought the benefit of him testifying was outweighed by the potential cost. Therefore, he advised the Petitioner not to testify. The Petitioner's father also advised him not to testify. Trial counsel said that the Petitioner "was able to weigh the gravity" of trial counsel's advice, that the Petitioner listened to his father and trial counsel, and that the Petitioner chose not to testify. Trial counsel acknowledged that it was the Petitioner's decision not to testify.

In a written order, the post-conviction court first addressed the Petitioner's claim that trial counsel should have called the victim's neighbor to testify and found that the Petitioner was not entitled to relief because he did not present the witness at the evidentiary hearing. Regarding the Petitioner's remaining claims, the court accredited trial counsel's testimony that he met with the Petitioner before trial, that they discussed the charge and the trial strategy, and that trial counsel provided the Petitioner with discovery materials. The post-conviction court also accredited trial counsel's testimony

that he encouraged the Petitioner not to testify due to the Petitioner's prior convictions. The court found that trial counsel properly investigated the case, noting that counsel used an investigator to aid with the defense. The post-conviction court concluded that the Petitioner failed to show by clear and convincing evidence that he was entitled to relief and denied the petition.

## II. Analysis

The Petitioner contends that the post-conviction erred by finding that he did not receive the ineffective assistance of trial counsel because trial counsel failed to present a meaningful defense, failed to present any witnesses or allow the Petitioner to testify, failed to call the victim's neighbor as a witness, failed to impeach the Petitioner's codefendants sufficiently, and "failed to produce any evidence which would have helped the jury understand what occurred from [the Petitioner's] point of view." The State argues that the post-conviction court properly denied the Petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the

petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Here, the post-conviction court accredited trial counsel's testimony that he met with the Petitioner before trial, that he discussed the charge and the trial strategy with the Petitioner, and that he provided the Petitioner with discovery materials. The court found that trial counsel properly investigated the case, noting that he used an investigator to aid with the defense. The post-conviction court also accredited trial counsel's testimony that he encouraged the Petitioner not to testify due to the Petitioner's prior convictions. We note that trial counsel additionally testified that he advised the Petitioner not to testify because he was concerned about the State's potential cross-examination of the Petitioner. Regarding trial counsel's failure to call the victim's neighbor as a witness for the defense, trial counsel testified that even though the neighbor may have said that he did not see the Petitioner with a gun, the neighbor's testimony would have corroborated the victim's version of the events.

With regard both to trial counsel's advice to the Petitioner not to testify and counsel's decision not to have the neighbor testify for the defense, criminal defendants are not entitled to perfect representation, only constitutionally adequate representation. Denton v. State, 945 S.W.2d 793, 796 (Tenn. 1996). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Moreover, "an accused is not deprived of the effective assistance of counsel because a different procedure or strategy might have produced a different result." Vermilye v. State, 754 S.W.2d 82, 85 (Tenn. Crim. App. 1987). This court may not "second guess" counsel's tactical or strategic choices made in the course of trial. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In any event, as noted by the post-conviction court, the Petitioner did not present the neighbor's testimony at the hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not

speculate on what benefit any witness might have offered to the Petitioner's case. <u>Id.</u> Therefore, the Petitioner is not entitled to relief.

With regard to the Petitioner's claim that trial counsel failed to impeach his codefendants sufficiently, the Petitioner has included the trial transcript in the appellate record. Our review of the transcript shows that the defense cross-examined the Petitioner' codefendants about their immunity agreements with the State, their involvement in prostitution with the victim, and their versions of the events in the victim's apartment. The Petitioner has not alleged what more trial counsel should have done to impeach their testimony or what evidence trial counsel should have presented that would have changed the outcome of his trial. Accordingly, we agree with the post-conviction court that he has failed to demonstrate that counsel was deficient or that he was prejudiced by any deficiency.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE